**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 14, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

AUNDRA ANDERSON, an
individual,

    Plaintiff - Appellee,

v.

DON BLAKE, individually and as a
state actor police officer for the City
of Norman, Oklahoma, a municipal
corporation,

    Defendant - Appellant

        and

KIMBERLY LOHMAN SUITERS,
also known as Kimberly Lohman,
individually and as employee of
KOCO-TV; OHIO/OKLAHOMA
HEARST-ARGYLE TELEVISION,
INC., doing business as KOCO TV, a
Nevada corporation; THE CITY OF
NORMAN, a Municipal corporation,
for purposes of injunctive and
equitable relief only; JOHN DOE;
JANE DOE, other unknown persons or
person having responsibility or
involvement in the circumstances of
the violation of the federal civil rights
and/or private rights of the plaintiff,
including other state actors, and/or
private persons acting in concert,

    Defendants.

No. 05-6329

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 05-CV-729-HE)

Rickey J. Knighton II, (Jeff Harley Bryant and Susan D. Rogers, on the briefs),
Norman, Oklahoma, for Defendant - Appellant.

Michael C. Salem, Norman, Oklahoma, for Plaintiff - Appellee.

Before **KELLY**, **HOLLOWAY**, and **McCONNELL**, Circuit Judges.

**KELLY**, Circuit Judge.

Defendant-Appellant Don Blake appeals the district court's denial of his Fed. R. Civ. P. 12(b)(6) motion to dismiss based on qualified immunity. Officer Blake contends that the district court erred by (1) holding that Plaintiff-Appellee Aundra Anderson possessed a constitutionally protected privacy interest in the contents of a video depicting her alleged rape, (2) holding that Ms. Anderson's constitutional privacy interest was clearly established, and (3) consequently rejecting Officer Blake's contention that he is entitled to qualified immunity from suit. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Background

Ms. Anderson's claims arise out of the publication of a videotape depicting

her alleged rape, which was disclosed to a television reporter and aired on a local news broadcast in Oklahoma City. Aplt. Br. at 2-3. She alleges she was the victim of a rape that occurred while she was unconscious, and that she later discovered a video documenting the rape. Id. After discovering the video, she reported the rape to Officer Blake, a detective with the City of Norman Police Department and turned the video over to him. Id. at 3. Ms. Anderson alleged that Officer Blake promised her that the video would remain confidential and would be used only for law enforcement purposes. Aplt. App. at 18 (Compl. ¶ 22).

Sometime thereafter, Officer Blake disclosed the contents of the video to a reporter named Kimberly Lohman and her cameraman, both of whom work for KOCO-TV, a television station based in Oklahoma City. Aplt. Br. at 3; Aplee. Br. at 11. Ms. Anderson alleges that the officer contacted her by phone and handed the line to Lohman who attempted to interview her about the details of her rape. Aplee. Br. at 11. Later, the television station aired portions of the video in a manner that obscured Ms. Anderson's identity during a news broadcast. Aplt. Br. at 3. Ms. Anderson alleges that there was no law enforcement purpose in defendant's release of the video. Aplee. Br. at 3.

The district court denied Officer Blake's motion to dismiss. Anderson v. Blake, No. Civ-05-0729-HE, 2005 WL 2210222 (W.D. Okla. Sept. 12, 2005). It concluded that the video of Ms. Anderson's alleged rape "possesses the requisite personal nature to give rise to Plaintiff's legitimate expectation of privacy." Id.

at *2.  It rejected Officer Blake's argument that the criminal activity allegedly depicted on the video rendered it beyond constitutional protection, holding that the alleged criminal activity depicted was not that of Ms. Anderson, but rather the rapist.  Finally, it also rejected Officer Blake's argument that the video was destined to be made public, concluding that such public disclosure was not inevitable.

Relying on Sheets v. Salt Lake County, 45 F.3d 1383 (10th Cir. 1995), the district court also concluded that Ms. Anderson's privacy interest was clearly established under existing law.  It concluded that the video depiction of the alleged rape was of a substantially more personal nature than a diary held to be protected in Sheets.  Accordingly, the district court concluded that Ms. Anderson had met her burden in overcoming the qualified immunity defense.

Discussion

An order denying qualified immunity that raises purely legal issues is immediately appealable.  See Johnson v. Fankell, 520 U.S. 911, 915 (1997).  Our review is de novo.  Butler v. Rio Rancho Pub. Sch. Bd. of Educ., 341 F.3d 1197, 1199 (10th Cir. 2003).  We accept all well-pleaded allegations of a plaintiff's complaint as true and consider them in the light most favorable to the non-moving party.  Id.  Accordingly, we will not reverse the district court unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim

which would entitle [her] to relief." Id.[1]

"The doctrine of qualified immunity shields public officials . . . from damage actions unless their conduct was unreasonable in light of clearly established law." Elder v. Holloway, 510 U.S. 510, 512 (1994). Once a defendant pleads qualified immunity as a defense, the plaintiff must show: (1) that the defendant's actions violated a constitutional or statutory right, and (2) that the rights alleged to be violated were clearly established at the time of the conduct at issue. Saucier v. Katz, 533 U.S. 194, 201 (2001).

To be clearly established, the contours of a right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotation and citation omitted). This means that there need not be precise factual correspondence between earlier cases and the case at hand, because "general statements of the law are not inherently incapable of giving fair and clear warning. . . . " Id. at 741 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In other words, a general constitutional rule that has already been established can "apply with obvious clarity to the specific conduct in question, even though the very action in

---

[1] Officer Blake's brief relies on some facts that were not alleged in his motion to dismiss. Because our review is confined to the pleadings, we do not consider those facts. If a defendant wishes to raise a qualified immunity argument based on facts outside the pleadings, he may do so in a motion for summary judgment. See Walker v. City of Orem, 451 F.3d 1139, 1146 n.5 (10th Cir. 2006); Langley v. Adams County, 987 F.2d 1473, 1481 n.3 (10th Cir. 1993).

question has [not] previously been held unlawful. Id. A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits. Smith v. Cochran, 339 F.3d 1205, 1215 (10th Cir. 2003).

I.     Privacy Interest in the Contents of the Video

The district court held that Ms. Anderson had a constitutionally protected privacy interest in the contents of the video because of its "personal nature." Anderson, 2005 WL 2210222, at *2. This conclusion is well supported by precedent from the Supreme Court and this circuit. In Whalen v. Roe, 429 U.S. 589, 599 (1977), the Supreme Court held that the constitutional right to privacy includes an "individual interest in avoiding disclosure of personal matters. . . . " Relying on Whalen, we held in Mangels v. Pena, 789 F.2d 836, 839 (10th Cir. 1986), that "[d]ue process thus implies an assurance of confidentiality with respect to certain forms of personal information possessed by the state." Information is protected by the right to privacy when a person has "a legitimate expectation . . . that it will remain confidential while in the state's possession." Id. We have held, without listing other factors, that this legitimate expectation of privacy depends "'at least in part, upon the intimate or otherwise personal nature of the material which the state possesses.'" Sheets, 45 F.3d at 1387 (quoting Mangels, 789 F.2d at 839). Even if personal information is protected by the right to privacy, the state may still justify its disclosure. Disclosure of such protected

information must "advance a compelling state interest which, in addition, must be accomplished in the least intrusive manner." Mangels, 789 F.2d at 839 (internal citation omitted). In Sheets, we formally articulated the inquiry as a two-part test. When the state discloses information that is alleged to be protected by the right to privacy, we determine first whether the information is protected by the right to privacy, and second, whether the state can demonstrate that it had a compelling interest for disclosure and that it used the least intrusive means of disclosing the information. Sheets, 45 F.3d at 1387.

Ms. Anderson possesses a constitutionally protected privacy interest in the video because it depicts the most private of matters: namely her body being forcibly violated. As the Sixth Circuit noted, "[p]ublically revealing information regarding [sexuality and choices about sex] exposes an aspect of our lives that we regard as highly personal and private." Bloch v. Ribar, 156 F.3d 673, 685 (6th Cir. 1998). Such a conclusion is also fully justified by precedent in our own circuit. In Cumbey v. Meachum, 684 F.2d 712, 714 (10th Cir. 1982) (per curiam), we held that the constitutional right of privacy may be violated when guards watch inmates of the opposite sex undressing or showering. Later, in Eastwood v. Department of Corrections, 846 F.2d 627, 631 (10th Cir. 1988), we stated more explicitly that the right to privacy is triggered when "an individual is forced to disclose information regarding personal sexual matters." There, we concluded that a person may have a constitutional privacy interest in refusing to

answer questions concerning sexual history posed by an employer. In Sheets, the case primarily relied upon by the district court, we held that a husband may have a legitimate expectation of privacy in his wife's diary–which was turned over to the police as part of a criminal investigation–because it contained reflections about the couple's personal relationship. 45 F.3d at 1388.

While there is no case in this circuit addressing whether a video depicting a rape may be within the right to privacy, it is not surprising, given our precedent, that we should reach such a conclusion. If a person has a legitimate expectation of privacy in a diary, in undressing before a guard, or in answering questions concerning sexual history, certainly a person has a reasonable expectation that a video of his or her rape will not be aired to thousands in a public news broadcast. In Bloch, the Sixth Circuit held that oral disclosure to the press of the intimate details of a rape violates the constitutional right to privacy absent a compelling government justification for disclosure. 156 F.3d at 686. Notably, the Bloch court relied on Eastwood and Mangels from this circuit. Other circuits have also held that unwelcome disclosure of private sexual information is protected by the right to privacy. See, e.g., Sterling v. Borough of Minersville, 232 F.3d 190, 196 n.4 (3d Cir. 2000) ("[W]e agree with other courts concluding that [forced disclosure of one's sexual orientation] is intrinsically private."); Powell v. Schriver, 175 F.3d 107, 111 (2d Cir. 1999) ("The excruciatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the

matter, is really beyond debate.").

Despite this authority, Officer Blake argues that the video is not protected by the right to privacy because it contains evidence of a crime. He relies on Cawood v. Haggard, 327 F. Supp. 2d 863 (E.D. Tenn. 2004), aff'd without opinion, Cawood v. Booth, 125 F.App'x. 700 (6th Cir. 2005), for support. In Cawood, the district court concluded that the airing of a video documenting the plaintiff's private sexual conduct was not protected by the right to privacy. Id. at 880. The court rested its decision on three key points: (1) the video in question depicted the plaintiff's own suspected criminal activity (trading sex for a reduction in legal fees), (2) the video was destined to become public as it was to be used as evidence in a trial against the plaintiff, and (3) the plaintiff waived any privacy interest he might have in the video by describing its contents in a press conference. Id.

Officer Blake argues that Cawood should be read as excluding from privacy protection any otherwise personal information that contains evidence of criminal conduct, regardless of whether the party asserting the right to privacy is the one alleged to have committed a crime. Aplt. Br. at 10. He also argues that, like Cawood, the video here was bound to be made public at a trial of the perpetrator in this case, or in other cases in which the perpetrator might be charged. Id. at 8.

This is too broad a reading of Cawood. Cases must be read against their facts, and an obvious and critical difference between Cawood and this case is that

Ms. Anderson is the <u>victim</u> of the crime depicted, not the perpetrator.  While validly enacted laws place people on notice that engaging in certain conduct is not within the right to privacy, <u>see</u> <u>Mangels</u>, 789 F.2d at 839, we have never held that a victim cannot assert a right to privacy merely because a crime has been perpetrated against him or her.

To be sure, private information that otherwise would be protected by the right to privacy may nevertheless be disclosed if the government can demonstrate a compelling interest and if it uses the least intrusive means of disclosure. <u>Sheets</u>, 45 F.3d at 1387.  But <u>Sheets</u> requires a fact specific inquiry into the disclosure of private information that forms the basis of the plaintiff's complaint. That private information has evidentiary value in a criminal prosecution does not give the government carte blanche to disclose the information in any manner it wishes prior to trial.  As we said in <u>Sheets</u> concerning the diary: "To turn a diary over to a limited group for what one perceives to be a limited and proper purpose is quite different than inviting publication of the material." <u>Id.</u> at 1388.  Thus, whether a particular government need and a particular manner of disclosure are sufficient to overcome the expectation of privacy is necessarily a question of degree.  Just because disclosing private information at a possible criminal trial is justified by the evidentiary nature of that information, it does not follow that disclosing the same information on a television news broadcast is similarly justified.

Officer Blake also suggests that because the video would have been inevitably disclosed at trial, it is beyond any legitimate expectation of privacy.[2] Again, Officer Blake asks us to ignore the fact specific nature of the Sheets test. Because there is an "individual interest in avoiding disclosure," id. at 1387, the inevitable disclosure of the video at trial does not necessarily justify its release at the time and in the manner it was disclosed. Moreover, we cannot assume inevitable disclosure consistent with our obligation to accept all of Ms. Anderson's well-pleaded factual allegations as true and view them in a light most favorable to her. As it stands, Officer Blake cannot establish, based on the pleadings alone, that disclosure was inevitable. As the district court noted, "[g]iven the nature of what is alleged to have been depicted on the tape, it is entirely possible that the criminal charges against plaintiff's attacker might have been resolved without a trial." Anderson, 2005 WL 2210222, at *2.

---

[2] Officer Blake asks us to follow Cawood, where the court expressly found that the video "was destined to become public." 327 F. Supp. 2d at 880. Yet, in a later portion of his brief, Officer Blake argues that whether disclosure of the video was inevitable "is not material" because at the time the disclosure was made in Cawood, "additional public disclosure was far from inevitable." Aplt. Br. at 9. Thus, Officer Blake seems to suggest that even if the video could have been inevitably disclosed, it is beyond any legitimate expectation of privacy. His reading of Cawood differs from the clear holding of the court that the videotape "was destined to become public." Furthermore, because we conclude that the right to privacy is not necessarily defeated by actual inevitable disclosure of private information, we need not address Officer Blake's apparent alternative argument that possible inevitable disclosure similarly defeats the right to privacy.

Officer Blake may yet articulate a compelling government interest for disclosing the video to the public and justify the manner of its disclosure. But at this point, aside from his argument that the video would be inevitably disclosed as part of a criminal prosecution, none appears in the district court pleadings properly considered on a motion to dismiss. In her complaint, Ms. Anderson alleges that no legitimate government interest existed for disclosure because the identity of the alleged perpetrator was already known by Officer Blake at the time the video was disclosed. Aplt. App. at 24 (Compl. ¶ 38). Officer Blake argues in his reply brief that another victim of the plaintiff's alleged attacker came forth after the airing of the video, and that, as a result, airing of the video "may have caused additional victims to come forth." Aplt. Reply Br. at 5-6. He, admits, however, that this "law enforcement reason" was not offered in the motion to dismiss because it is a matter outside the pleadings. Id. at 6. While this reason may be considered in subsequent proceedings, we do not consider it at this juncture.

Relying on supplemental authority submitted prior to oral argument, see Stidham v. Peace Officer Stds. & Training, 265 F.3d 1144, 1156 (10th Cir. 2001), Officer Blake also argues that Ms. Anderson has not adequately alleged an affirmative link between his conduct and any constitutional violation caused by the reporter's decision to broadcast the tape. However, Ms. Anderson alleges that Officer Blake and Lohman acted jointly and in concert, and the surrounding facts

of the complaint adequately support an inference of an affirmative link.

II.    Privacy Interest as Clearly Established

To defeat defendant's qualified immunity claim, Ms. Anderson must also demonstrate that her privacy interest in the video was clearly established at the time the officer disclosed it.  See Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 841 (10th Cir. 2005).  The contours of the right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Hope, 536 U.S. at 739 (internal quotations and citations omitted).  Because we do not require "precise factual correspondence" between the cases establishing the law and the case at hand, Eastwood, 846 F.2d at 630, "[i]t is incumbent upon government officials to relate established law to analogous factual settings," id. (internal quotation and citation omitted).

We think Ms. Anderson's privacy interest in the video (as challenged by Officer Blake in his motion to dismiss) was clearly established based on Sheets, Eastwood, Mangels, and Cumbey, all decided before the events here.  These cases were sufficiently clear to the Sixth Circuit that it relied on them to form the basis of its holding in Bloch, also decided before the events here.  These cases must be considered in the context of the Supreme Court's holding in Hope that a general constitutional rule that has already been established can "apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful."  536 U.S. at 741 (internal quotations

- 13 -

and citations omitted).

Because the district court relied primarily on Sheets, Officer Blake attempts to draw distinctions between Sheets and this case to demonstrate that Ms. Anderson's privacy interest was not clearly established. He distinguishes Sheets on three grounds: (1) the information conveyed in Sheets was linked to a spousal relationship, (2) the diary in Sheets was not evidence that could have been used in a criminal trial, (3) the disclosure in Sheets occurred after the criminal investigation had ended. Aplt. Br. at 13. While these factual distinctions between Sheets and the instant case are correct, they do not change the result here. Our cases do not indicate that information must be linked to a spousal relationship to be within the right to privacy. Instead, we have repeatedly held that whether information is within the right to privacy depends on the "intimate or otherwise personal nature of the material which the state possesses." Sheets, 45 F.3d at 1387. Likewise, the usefulness of the information in a criminal proceeding and the timing of the disclosure bear on, but are not dispositive of, whether the government has a legitimate reason to disseminate information that is otherwise protected by the right to privacy.

We recognize that a plaintiff alleging improper disclosure of private information must also demonstrate that a defendant lacked a compelling interest to disclose the information and did not utilize the least intrusive means of

- 14 -

disclosure.[3] But we think Ms. Anderson has satisfied her burden at this stage of the proceedings. Her complaint alleged "[t]here was no compelling law enforcement or public interest that permitted the disclosure, release, and broadcast of the tape at this stage of the investigation . . . in that the identity of the Attacker was already well known to the Police Department and Defendant Blake." Aplt. App. at 24 (Compl. ¶ 38). The complaint also asserts that the disclosure and broadcast of the tape "were not accomplished in the least intrusive manner. . . . " Id. The motion to dismiss did not address these allegations. At this stage of the proceedings, we will not require Ms. Anderson to disprove every possible compelling interest that Officer Blake might assert when he does not move for qualified immunity on this basis. See Currier v. Doran, 242 F.3d 905, 916-17 (10th Cir. 2001) (rejecting "heightened pleading standard" for qualified immunity).

III.    Plaintiff's Alternative Request for Leave to Amend

Ms. Anderson included a request for leave to amend in her response to defendant's motion to dismiss. Aplt. App. at 72-73. She attempted to preserve this request in her response brief before this court. Aplee. Br. at 6-7. She

---

[3] We read Sheets to hold that a plaintiff has a constitutionally protected privacy interest in information when a plaintiff has a legitimate expectation of privacy in the information and when the defendant fails to show a compelling interest in disclosing the information and that it used the least intrusive means of disclosure. 45 F.3d at 1387.

essentially seeks to amend her complaint to clarify allegations of procedural due process violations that were "not well-stated" in the complaint, id. at 7, and which became more apparent following the limited discovery that took place after Officer Blake filed his motion to dismiss, id. at 8-10.

The attempted procedural due process claim rests on Officer Blake's alleged deviation from the City of Norman's internal disclosure procedures and the Oklahoma Open Records Act. Id. at 9. There is no reference to either the internal procedures or the state statute in the complaint. It appears that Ms. Anderson only considered the procedural due process claim after Officer Blake filed his motion to dismiss. Id. at 7.

"As a general rule an appellate court does not consider an issue not passed upon below." Lowe v. Town of Fairland, 143 F.3d 1378, 1381 (10th Cir. 1998). The district court did not rule on the request for leave to amend. Because we affirm the order of the district court denying qualified immunity, we need not rule on the request for leave to amend. Instead, we consider the request to be still pending in the district court, which can address the matter and decide whether to grant leave to amend or to determine that an independent claim for procedural due process was sufficiently pled in the initial complaint.

AFFIRMED.