**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 6, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOSEPH W. LEISER,

      Plaintiff - Appellant,

v.

SHANNON MOORE; RANDY ROGERS,

      Defendants - Appellees.

No. 17-3206

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 5:16-CV-04110-DDC-KGS)**
_____

Emily J. Heltzel, William & Mary Appellate and Supreme Court Clinic, Williamsburg, Virginia (Patricia E. Roberts, and Nancy C. Iheanacho, William and Mary Appellate and Supreme Court Clinic, Williamsburg, Virginia, and Tillman J. Breckenridge, Bailey & Glasser LLP, Washington, D.C. with her on the briefs), for Plaintiff-Appellant.

Terelle A. Mock (Andrew D. Holder, with her on the brief), Fisher, Patterson, Sayler & Smith, L.L.P., Topeka, Kansas
_____

Before **LUCERO**, **BALDOCK**, and **HARTZ**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

This appeal presents the question whether clearly established law supports the

claim of Plaintiff Joseph Leiser that two jail officials in Coffey County, Kansas, violated

his constitutional rights by disclosing medical information about him that they had

properly obtained. While Plaintiff was incarcerated in an Illinois jail awaiting extradition to Coffey County, the administrator of the Coffey County Jail, Defendant Shannon Moore, requested that the Illinois jail arrange for multiple medical examinations of Plaintiff, including a chest x-ray and a CT scan of his brain, to determine whether he had suffered serious injuries after being tasered by United States marshals. When Moore inquired about the results of the tests, she was told that they showed bone lesions and possible cancer. Upon receiving this information, Moore and Defendant Randy Rogers, the Coffey County Sheriff, conveyed it to the Coffey County Hospital and to Plaintiff's family and friends, without first obtaining permission from Plaintiff.

Upon learning of these disclosures, Plaintiff sued Moore and Rogers in state court on various grounds under state and federal law, including alleged violations of his constitutional rights. Defendants removed the case to the United States District Court for the District of Kansas. The district court granted Defendants judgment on the pleadings on Plaintiff's federal-law claims and declined to exercise supplemental jurisdiction on the state-law claims.

Plaintiff appeals only the dismissal of his claim under 42 U.S.C. § 1983 for violation of his constitutional right to privacy. He does not challenge Defendants' acquisition of his medical information. And he does not press any argument about the disclosure to the hospital, focusing instead on the "disclosure of [Plaintiff]'s medical information to his family and friends," which allegedly was unconstitutional because it "could not have served a legitimate penological interest." Aplt. Br. at 21. Exercising

2

jurisdiction under 28 U.S.C. § 1291, we affirm because Defendants are entitled to qualified immunity.

## I.   DISCUSSION

"We review a district court's grant of a motion for judgment on the pleadings de novo, using the same standard that applies to a Rule 12(b)(6) motion." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (internal quotation marks omitted). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. We assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (brackets, citation, and internal quotations marks omitted).[1]

The district court ruled that Defendants are entitled to qualified immunity. The defense of qualified immunity "shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Estate of Booker v.*

---

[1] Plaintiff argues that since the case was removed from state court, the district court should have instead used the state pleading standard or should have provided him leave to amend his complaint to conform to the federal rules. His argument that state pleading standards apply is contrary to circuit precedent. *See Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010) ("After the removal of an action from state court the case will proceed as if it originally had been brought in the federal court. Thus, it has been settled by numerous cases that the removed case will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters." (ellipsis and internal quotation marks omitted)). As for leave to amend, Plaintiff concedes that he did not raise that issue in district court. And on appeal he does not argue for plain-error review, arguing only that we can review the issue because it is important and "pure[ly] legal" in nature. Aplt. Br. at 27–28. We decline to consider his forfeited argument because we typically review such claims only if the litigant argues for plain-error review. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011).

3

*Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (ellipsis and internal quotation marks omitted). "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id.* (internal quotation marks omitted).

We express no view on whether Plaintiff's constitutional rights were violated. We can resolve this appeal by considering only the clearly-established prong of the qualified-immunity defense. *See Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009) ("We may, at our discretion, consider the two parts of this test in the sequence we deem best in light of the circumstances in the particular case at hand." (internal quotation marks omitted)). Ordinarily, to establish that a proposition of law is clearly established in this circuit, the plaintiff must rely on an on-point precedent of this court or the Supreme Court or a clear consensus of a significant number of fellow circuit courts. *See T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (can "show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision . . ."); *Stewart v. Beach*, 701 F.3d 1322, 1332 (10th Cir. 2012) ("In the absence of controlling authority, we may conclude that a constitutional right is clearly established if there is a robust consensus of cases of persuasive authority." (internal quotation marks omitted)). "'[C]learly established law' should not be defined at a high level of generality. As [the Supreme] Court explained decades ago, the clearly established law must be particularized to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract

4

rights." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citations, ellipsis, original brackets, and further internal quotation marks omitted). Thus, while a plaintiff does not have to cite a "case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question *beyond debate*." *Id.* at 551 (emphasis added) (internal quotation marks omitted).

Plaintiff claims a violation of his constitutional right of privacy. To put this claim in context, it is worth repeating a statement of Professor Kurland quoted by the Supreme Court some 40 years ago in an opinion that appeared to recognize the sort of privacy interest claimed in this case. The statement distinguishes three facets of a right to privacy:

> The concept of a constitutional right of privacy still remains largely undefined. There are at least three facets that have been partially revealed, but their form and shape remain to be fully ascertained. The first is the right of the individual to be free in his private affairs from governmental surveillance and intrusion. *The second is the right of an individual not to have his private affairs made public by the government*. The third is the right of an individual to be free in action, thought, experience, and belief from governmental compulsion.

*Whalen v. Roe*, 429 U.S. 589, 599 n.24 (1977) (emphasis added) (quoting Philip B. Kurland, *The Private I: Some Reflections on Privacy and the Constitution*, Univ. of Chi. Mag., Autumn 1976, at 7, 8). The first facet is the province of the Fourth Amendment. *See id.* The third is exemplified by freedom of exercise of religion and the abortion-rights cases. This case concerns the scope of the right not to have one's private affairs made public by the government, sometimes referred to as a right to informational privacy.

In two published opinions this circuit has held that government disclosure of an individual's personal medical information violated the Constitution. In *A.L.A. v. West Valley City*, 26 F.3d 989, 990 (10th Cir. 1994), an officer conducting a search incident to arrest discovered a paper stating that the plaintiff was HIV positive (which later proved to be an incorrect diagnosis). The officer informed a number of people, including the plaintiff's relatives and acquaintances, of his discovery. We said that "[t]here is no dispute that confidential medical information is entitled to constitutional privacy protection," and that the inaccuracy of the report was "entirely irrelevant" to the constitutional issue. *Id.*

A few years later, in *Herring v. Keenan*, 218 F.3d 1171, 1173 (10th Cir. 2000), a probationer told his supervising officer that he thought he was HIV positive. The officer told the probationer's employer and demanded that he be fired; he also told the probationer's sister. *See id.* We said that "[t]his circuit . . . has repeatedly interpreted the Supreme Court's decision in *Whalen* . . . as creating a right to privacy in the non-disclosure of personal information." *Id.* at 1175. And we described *A.L.A.* as "the first case in this circuit that recognized that there is a constitutional right to privacy regarding disclosure by a police officer of the results of an arrestee's HIV test." *Id.* We concluded that the probationer had correctly "alleged a violation of a constitutional right to privacy in the non-disclosure of information regarding one's HIV status by a government official." *Id.*[2]

---

[2] Plaintiff could also find support in our more recent decision in *Anderson v. Blake*, 469 F.3d 910, 914–15, 917–18 (10th Cir. 2006) (rape victim had a clearly established liberty

6

Plaintiff quite reasonably argues that these two precedents from our circuit, as well as a few similar decisions by other circuits, clearly establish the law supporting his constitutional claim in this case. But we are not persuaded.

One reason is that there are factual differences between the precedential cases and the one before us. When our precedents were decided, the stigma of HIV was enormous. The plaintiff in *A.L.A.*, for example, said that the (inaccurate) disclosure that he was HIV positive caused family and friends to shun him and refuse to visit him in jail and that fellow prisoners and guards harassed him. *See* 26 F.3d at 990. A diagnosis of cancer is not nearly as opprobrious as a diagnosis of HIV was then. A further distinction is that the disclosure in this case had a plausible positive purpose—to encourage the support of family and friends—as opposed to the hostile purposes in our precedents.

The second reason is the difference in governing law: the development—or, perhaps more precisely, the clarification—of the relevant constitutional law by the Supreme Court in the interval between our precedents and this case. As we proceed to explain, our precedents relied on a reasonable misreading of two Supreme Court opinions as establishing a right to informational privacy. More recently, however, the Supreme Court has made clear that the existence of such a right is an open question and it has not abandoned a third precedent which suggests that any right to informational privacy is limited.

---

interest in challenging officials' disclosure of videotape depicting the attack), although the personal interest in that case might be based, at least in part, on the interest in privacy regarding intimate sexual matters.

The lower courts that have declared a constitutional protection against government disclosure of personal information have relied on two Supreme Court opinions from the 1970s, both of which held that there was no constitutional violation in the case before the Court. In *Whalen*, 429 U.S. at 593–94, the Court considered a challenge to a New York program that required physicians to disclose to the State certain information about their prescriptions for various controlled substances. The physician needed to submit forms identifying the physician, the dispensing pharmacy, the drug and dosage, and the patient (by name, address, and age). *See id.* The plaintiff physicians and patients complained that their privacy interests were violated by the required disclosures. *See id.* at 600. The Court rejected the claim because of the significant public interest in the disclosures to the government and the state's statutory protections against improper disclosure by the government agencies receiving the information. *See id.* at 600–04. One passage in the opinion, however, appeared to recognize a constitutional right: "The cases sometimes characterized as protecting 'privacy' have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters . . . ." *Id*. at 598–99.

A few years later the Supreme Court confronted a similar issue in *Nixon v. Administrator of General Services*, 433 U.S. 425, 455–65 (1977). Former President Nixon brought a Fourth and Fifth Amendment challenge to a federal statute that let the government take custody of all his presidential tapes and other materials, which included purely personal matters unrelated to his official duties. *See id.* at 429, 455. The Court upheld the statute because of the important public interest served by preservation of the

8

nonpersonal materials and the protections afforded to the President's privacy. *See id.* at 457–65. But again the Court appeared to recognize the constitutional protection against disclosure, stating that "[o]ne element of privacy has been characterized as 'the individual interest in avoiding disclosure of personal matters.'" *Id.* at 457 (quoting *Whalen*, 429 U.S. at 599).

These two decisions were in tension with a Supreme Court opinion issued less than a year before *Whalen*. In *Paul v. Davis*, 424 U.S. 693, 695 (1976), a town circulated a flyer to merchants identifying the plaintiff as an "Active Shoplifter." Although the plaintiff had been arrested and arraigned on a charge of shoplifting, the charge had not been pursued and was dismissed shortly after the flyer was circulated. *See id.* at 695–96. Claiming that he had been impermissibly denied a liberty interest protected by the Fourteenth Amendment, *see* U.S. Const. amend. XIV ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."), the plaintiff filed suit under 42 U.S.C. § 1983. *See Paul*, 424 U.S. at 696, 698. The Court rejected the claim. *See id.* at 709. It said that an interest in reputation alone was quite different from any liberty or property interest recognized in its precedents and was not guaranteed against state deprivation without due process. *See id.* at 711–12. The Court expressed concern about "mak[ing] . . . the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Id.* at 701. The Court also rejected the plaintiff's claim that the state's disclosure violated "a right to privacy guaranteed by the First, Fourth, Fifth, Ninth, and Fourteenth Amendments." *Id.* at 712. It said that the right to privacy it had previously recognized

9

outside of the context of search and seizure concerned "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education," and that the plaintiff's claim was "far afield from this line of decisions." *Id*. at 713.

*Whalen*, however, appeared to undermine *Paul*. When it spoke of "the individual interest in avoiding disclosure of personal matters," it made no reference to *Paul*, a striking omission considering how recently *Paul* had been decided. 429 U.S. at 598–99 & n.25. The only reference to *Paul* in *Whalen* was the quotation of *Paul*'s description of "matters relating to marriage," etc. as being the subject matter of those cases involving an "interest in independence in making certain kinds of important decisions"—the second kind of privacy interest the Court said had been addressed in its precedents. *Id.* at 600 & n.26. As for *Nixon*, it ignored *Paul* altogether.

It is thus unsurprising that this circuit's precedents did not grapple with *Paul* in determining the scope of the right to informational privacy. *Herring*, 218 F.3d at 1175, for example, relied on our decision in *Slayton v. Willingham*, 726 F.2d 631 (10th Cir. 1984), which summarily disposed of *Paul*:

> We think that the district court misapplied *Paul v. Davis*. That case held that publicity that damaged the plaintiff's reputation and no more was neither a deprivation of his fourteenth amendment liberty interest nor a violation of his constitutional right to privacy. 424 U.S. at 712–13. Since *Paul v. Davis*, however, the Supreme Court has explicitly recognized that the constitutional right to privacy encompasses an "individual interest in avoiding disclosure of personal matters." *Whalen v. Roe,* 429 U.S. 589, 599 (1977) (footnote omitted); *Nixon v. Administrator of General Services,* 433 U.S. 425, 457 (1977).

*Id.* at 635. That was a more than reasonable view of where the Supreme Court stood; and, in any event, it would be binding precedent in this circuit—and therefore would be

10

clearly established law that there is a constitutional right to informational privacy—absent further elaboration by the Supreme Court. *See United States v. Springer*, 875 F.3d 968, 975 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 2002 (2018) (we are ordinarily bound by circuit precedent unless "subsequent Supreme Court authority undermines our prior precedent").

But in recent years the Supreme Court *has* significantly elaborated on the applicable law, raising serious doubts about the assumptions of governing law on which we relied in our precedents on the disclosure of private medical information. First, in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), the Court recognized that there was at least some life left in *Paul*. Doe had challenged the public disclosure of Connecticut's sex-offender registry because he had been denied a hearing to determine whether he was no longer dangerous. The Court rejected the challenge. It noted that in *Paul* it had "held that mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest." *Id.* at 6–7. But it did not need to decide whether *Paul* itself demanded denial of the claim because state law required listing in the registry even if Doe was no longer dangerous, so there would be no point in giving him the requested hearing. *See id.* at 7–8.

Much more importantly, in 2011 the Supreme Court made clear that any statements in its precedents regarding a constitutional protection against government disclosure of personal information were dicta. The opinion in *NASA v. Nelson*, 562 U.S. 134, 138 (2011), began as follows: "In two cases decided more than 30 years ago, this Court referred broadly to a constitutional privacy 'interest in avoiding disclosure of

11

personal matters.' *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977); *Nixon v. Administrator of General Services*, 433 U.S. 425, 457 (1977)." "[R]eferred broadly to" is not the sort of language courts use to designate holdings. Then, after noting that the plaintiff federal contract employees were relying on *Whalen* and *Nixon* to challenge questions on forms to be filled out by employees and their references, the Court wrote: "We assume, without deciding, that the Constitution protects the privacy right of the sort mentioned in *Whalen* and *Nixon*." *Id.* Why "assume" something if it had already been resolved by precedent? There would be no need to merely assume the proposition, and there would be nothing to reserve decision on, if the Supreme Court had previously held that the Constitution protected such privacy rights. (In this regard, it is important to remember that the constitutional claims in *Whalen* and *Nixon* were both rejected by the Court.) Later in its *NASA* opinion, the Court made the point explicitly, saying: "As was our approach in *Whalen*, we will assume for present purposes that the Government's challenged inquiries implicate a privacy interest of constitutional significance." *Id.* at 147.

Thus, it can no longer be said in the context of government disclosure of information that "[t]here is *no dispute* that confidential medical information is entitled to constitutional privacy protection." *A.L.A.*, 26 F.3d at 990 (emphasis added).[3] The

---

[3] Indeed, the concurrence of Justice Scalia in *NASA* shows that the existence of a right of informational privacy is a matter of vigorous dispute. The concurrence asserted that not only is there no Supreme Court precedent on the existence of a constitutional protection against government disclosure of personal information, but that *Paul* forecloses the existence of such a right:

> Our due process precedents, even our "substantive due process" precedents, do not support *any* right to informational privacy. . . . [W]e have held that a

12

Supreme Court has stated that this is an open question—it has never held that there is a constitutional right to prevent government disclosure of private information. This is not to say that our precedents on this issue are incorrect or that they have been overruled. That is a matter we need not decide on this appeal. The question before us is only whether the law is clearly established that government disclosure to family and friends that a prisoner is suffering from cancer violates the prisoner's constitutional rights. Even if we assume that the disclosures in *A.L.A.* and *Herring* were unconstitutional, it is certainly unclear how far those opinions should be extended when we do not know the doctrinal boundaries of the protection against government disclosure. For example, it would be consistent with our precedents to say that disclosures are prohibited only when they shock the conscience. *Cf. Browder v. City of Albuquerque*, 787 F.3d 1076, 1078–79 (10th Cir. 2015) (Gorsuch, J.) ("If the [alleged constitutional due-process] infringement is

---

> government act of defamation does not deprive a person "of any 'liberty' protected by the procedural guarantees of the Fourteenth Amendment." *Paul v. Davis*, 424 U.S. 693, 709 (1976). We reasoned that stigma, standing alone, does not "significantly alter" a person's legal status so as to "justify the invocation of procedural safeguards." *Id.* at 708–709.

*Id.* at 161–62 (Scalia, J., concurring) (emphasis added) (original brackets omitted). Justice Scalia then argued that if the Constitution does not provide protection against public disclosure of *false* information, it makes no sense to say that it protects against disclosure of information that is true: "If outright defamation does not qualify, it is unimaginable that the mere disclosure of private information does." *Id.* at 162. The majority opinion in *NASA* did not take issue with the substance of Justice Scalia's discussion of the existence of the constitutional right; it responded only by saying that this was not the case to resolve the matter. *See NASA*, 562 U.S. at 147 n.10. ("The opinions concurring in the judgment . . . would . . . provide a definitive answer to the question whether there is a constitutional right to informational privacy. . . . There are sound reasons for eschewing [that] course.").

13

the result of executive action, the Supreme Court has instructed us to ask whether that action bears a reasonable justification in the service of a legitimate governmental objective or if instead it might be characterized as arbitrary, or conscience shocking." (internal quotation marks omitted)). The government disclosures that the plaintiffs in our two precedents were HIV positive were vicious and outrageous.

In this regard, we think a decision by the Second Circuit is particularly relevant. In *Matson v. Board of Education*, 631 F.3d 57, 58–60 (2d Cir. 2011), decided a week before *NASA*, a teacher sued for public disclosure of her fibromyalgia. The court rejected the claim, distinguishing its precedents holding that a constitutional "privacy right exists with respect to a person's HIV status and transsexualism." *Id.* at 64 (citation omitted). It declared that "the interest in the privacy of medical information will vary with the condition," *id.* (internal quotation marks omitted), noting that "[h]istorically, courts have considered on a case-by-case basis whether a disease was contagious or attributed in any way to socially repugnant conduct and whether it could be said that society as a whole views the disease as directly associated with any disease which might conceivably be characterized as loathsome," *id.* at 66. (ellipsis, brackets, and internal quotation marks omitted); *see id.* (noting a New York case saying that cancer is not a loathsome disease). What distinguished fibromyalgia from AIDS and transsexualism was that its disclosure would not "bring about public opprobrium [or] expose a person to discrimination and intolerance." *Id.* at 67 n.7.

We cannot say that it is clearly established that this court, in light of *NASA*'s characterization of *Whalen* and *Nixon* as expressing only dicta, would reject the kind of

14

distinction between diseases that the Second Circuit expressed in *Matson*.  In short, in our view clearly established law does not support Plaintiff's constitutional claim.

## II.    CONCLUSION

We **AFFIRM** the district court's judgment.  We **GRANT** plaintiff's motion to proceed *in forma pauperis*.