2011 OK 21

**GIRL SCOUTS–WESTERN OKLAHOMA, INC., an Oklahoma non-profit corporation, Plaintiff/Appellee,**

v.

**Marilyn BARRINGER–THOMSON, Defendant/Appellant,**

and

**Paychex, Inc., Defendant.**

No. 108676.

Supreme Court of Oklahoma.

March 29, 2011.

J. David Terrell and David L. Thomas, Oklahoma City, Oklahoma, for the Appellee.

Charles F. Alden, Oklahoma City, Oklahoma, for the Appellant.

EDMONDSON, J.

¶1 The defendant/appellant Marilyn Barringer–Thomson (Attorney) is an attorney who represented Girl Scouts–Sooner Council, Inc. (Sooner) on employee severance and oth-

er matters related to employees of Sooner.[1] Subsequently, Sooner merged with Girl Scouts–Red Lands Council, Inc. (Red Lands) and the surviving corporation is the plaintiff/appellee, Girl Scouts–Western Oklahoma, Inc. (Western). Western filed a replevin action to obtain all Sooner files and documents, including confidential employee severance agreements, in the possession of Attorney and now owned by Western as a result of the merger. The petition recited that the documents sought contained details of agreements between Sooner and its former employees for which Western is now responsible as Sooner's successor in interest. Attorney objected, claiming attorney-client privilege and attorney work product. Western asserted that the attorney-client privilege transferred to it as a result of the merger. Both sides filed motions for summary judgment and the trial judge granted summary judgment in favor of Western. Attorney appealed and we granted her motion to retain the case.

¶ 2 The merger agreement between Sooner and Red Lands is dated effective March 1, 2008. The agreement recites that it is in the best interests of the two councils to merge and that the merger is pursuant to section 1085 of Oklahoma's General Corporation Act, 18 O.S.2001 1001 et seq. The majority of delegates of each council who were entitled to vote approved the merger agreement. Article 1.1 of the merger agreement provides that Sooner shall be merged with and into Red Lands and that the separate existence of Sooner shall cease. Red Lands shall be the surviving entity and shall continue its corporate existence and organization under the laws of the State of Oklahoma and shall be known as Girl Scouts–Western Oklahoma, Inc. Article 1.3 provides that the merger shall have the effects set forth in the agreement and in Section 1088 and other applicable provisions of the Oklahoma General Corporation Act.

¶ 3 The merger agreement provides that all of the assets, properties, rights, privileges, immunities, powers and franchises of Sooner and Red Lands shall vest in the surviving entity and that all debts, liabilities and duties of Sooner and Red Lands shall become the debts, liabilities and duties of the surviving entity. Section 3.1 provides that the respective officers of each council are authorized and directed to do any acts and make, execute, deliver, file or record any papers necessary or convenient to effect the provisions of the merger agreement. Section 3.5 provides that by virtue of the merger, the control of the Sooner Girl Scout Support Trust will be transferred to the surviving entity, for the perpetuation of girl scouting in Western Oklahoma.

¶ 4 Section 1088 of Oklahoma's General Corporation Act provides, in pertinent part:

"When any merger or consolidation shall have become effective pursuant to the provisions of the Oklahoma General Corporation Act, for all purposes of the laws of this state, the *separate existence of all the constituent corporations,* or of all such constituent corporations *except the one into which the other or others of such constituent corporations have been merged,* as the case may be, *shall cease and the constituent corporations shall become a new corporation, or be merged into one of such corporations,* as the case may be, *possessing all the rights, privileges, powers* and franchises as well of public as of a private nature, *and being subject to all the restrictions, disabilities and duties of each of such corporations so merged* or consolidated; *and all* and singular, *the rights, privileges, powers and franchises of each of said corporations, and all property, real, personal and mixed, and all debts due to any of said constituent corporations on whatever account, as well for stock subscriptions as all other things in action or belonging to each of such corporations shall be vested in the corporation surviving or resulting from such merger* or consolidation; *and all property, rights, privileges, powers and franchises, and all and every other interest shall be thereafter as effectually the property of the surviving or resulting corporation as they were of the several and respective constituent corporations.* ... All debts liabilities and duties of the respective constituent corporations,

1. The defendant, Paychex, Inc., has been dismissed and is not a party to the appeal.

from that time forward, attach to said surviving ... corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it." 18 O.S.2001 1088 (emphasis added).

¶ 5 Attorney relies on the Oklahoma Rules of Professional Conduct regarding client confidentiality and states that she is required to follow federal and state laws governing employer and employee relations, document retention and confidentiality. Western argues that it is now the client and owns Sooner's files, as well as Sooner's attorney-client privilege. Western relies on *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), in support of its claim that the attorney-client privilege has passed to Western.

¶ 6 On January 30, 2009, the trial judge entered an "Order for Delivery and Protective Order" that ordered Attorney to produce to plaintiff's counsel all signed severance agreements in her possession from her former client, Sooner. The court directed that the documents be treated as confidential until further order of the court. The severance agreements were delivered at that time and copies filed under seal. A transcript of that hearing reflects that the court directed Attorney to conduct an inventory of "all the documents that she has that relate to Sooner" and submit it to the plaintiff. The trial judge agreed to rule on any privilege claims made. On July 22, 2009, the parties entered into a stipulated protective order which provided that each party could designate as confidential any documents produced by it and that the protective order would continue until further order of the court. On September 8, 2009, the Defendant filed exhibits under seal pursuant to the stipulated protective order. On October 1, 2009, Attorney filed a Privilege Log as to Sooner's documents.[2]

¶ 7 On March 26, 2009, Attorney filed a motion for summary judgment.[3] In support of her motion, Attorney argued that the documents sought are protected by attorney-client privilege and that her client, Sooner, never waived the privilege. She submitted affidavits from two former members of Sooner's board of directors which state that the board of directors of Girl Scouts–Sooner Council did not waive the privilege. She argued that the duty of confidentiality continues after the attorney-client relationship has ended and that the merger agreement did not waive the privilege. Attorney stated that she never did any legal work for Red Lands or Western and that she did not have an attorney-client relationship with them. Attorney also claimed that the documents are attorney work product.

¶ 8 Western asserted that, by operation of law, Sooner's interest passed to Western as a result of the merger; that Western, as the owner of the documents, was entitled to Sooner's files in Attorney's possession; and that the attorney-client privilege had passed to Western and could be waived by Western's board as successor management. Western argued that work product did not apply because the client's files belonged to the client and Western had become the client. Attorney initially argued that a mere sale of assets occurred and that the privilege did not transfer in that situation. Western responded that the merger agreement reflected that the work of Sooner will be carried on by Western.

¶ 9 On August 6, 2010, the trial court granted Western's motion for summary judgment and denied Attorney's motion for summary judgment. The trial judge did not make findings of fact and conclusions of law. There is no transcript in the record of a hearing on the motions. The journal entry of judgment directs that "all correspondence, emails, documents and records (whether in digital form or hard copy) of each and every kind, or which are, in any way whatsoever, related to Defendant's representation of Girl Scouts–Sooner Council, Inc. and which are in the Defendant's possession or control shall be provided to counsel for the Plaintiff." The journal entry reserved the issue of plaintiff's attorney fees and costs for hearing upon

---

2. We have not examined the documents filed under seal.

3. Both parties earlier had filed motions for summary judgment that were denied by the trial court on January 30, 2009.

application by plaintiff. The trial court's order was stayed by this Court pending resolution of the appeal.

¶ 10 The appeal of a summary judgment is an accelerated procedure and the record on appeal is limited. Okla. Sup.Ct. Rule 1.36(c). The briefs are those filed in the trial court in support of and in response to the motions for summary judgment. The standard of review is de novo. *In re MacFarline*, 2000 OK 87, 14 P.3d 551, 555. For a party to be entitled to summary judgment in his or her favor, the record must show that party entitled to judgment as a matter of law.

## DISCUSSION

¶ 11 This is a replevin action where the issue before us is ownership of Sooner's files and documents. This is not a discovery dispute in which the attorney-client privilege has been asserted to prevent discovery by third parties of privileged communications. Western is not seeking to discover Sooner's files in order to prepare for or prosecute its replevin action, but is seeking to recover property transferred to it by operation of law as a result of the merger. Ownership of the files is the gravamen of the action. 12 O.S. Supp.2010 1571.

¶ 12 Western alleged ownership of all of Sooner's documents and materials based on the merger. In support of its counter-motion for summary judgment, Western attached the merger agreement, annual meeting minutes of Sooner and Red Lands adopting the merger agreement, the Certificate of Merger submitted to the Secretary of State and the Certificate of Merger issued by the Secretary of State. The merger agreement provides that all of the assets, properties, rights, privileges, immunities, powers and franchises of Sooner shall vest in the surviving entity. Likewise, under the merger agreement, all debts, liabilities and duties of Sooner shall become the debts, liabilities and duties of the surviving entity.

Thus, under the merger agreement, what belonged to Sooner now belongs to Western. Western recognizes that matters that were confidential in the hands of Sooner must remain confidential in the hands of Western.[4]

¶ 13 The Boards of Directors of Sooner and Red Lands deemed merger to be in the best interests of such councils and their members, and each council adopted the merger agreement at their respective board meetings. The merger agreement, supported by affidavit of Western's CEO, reflects that the parties intended a merger of the two councils in order to streamline operations and to continue the business of girl scouting in western Oklahoma. The merger agreement supports the plaintiff's ownership of Sooner's documents and materials as a matter of law as a result of the merger.

¶ 14 We must now determine whether the defendant is wrongfully holding the plaintiff's property. In other words, did the trial court properly rule that the materials should be delivered to Western over Attorney's claim of attorney-client privilege and attorney work product? The merger agreement does not restrict or exclude any documents or files, either in the possession of Sooner or Red Lands, or their attorneys. In Section 3.1, the respective Boards direct the officers of each council "to do any acts and to make, execute, deliver, file and/or record any papers necessary, proper or convenient" to effect the provisions of the merger agreement. The merger agreement thus reflects that transfer of documents was encouraged in order to implement the merger.

¶ 15 The attorney-client privilege belongs to the client and not to the lawyer, and it may be waived only by the client. *Chandler v. Denton*, 1987 OK 38, 741 P.2d 855, 865. If the client is a corporation, the privilege may be claimed by the successor, trustee, or similar representative. 12 O.S. Supp. 2009 2502(C).[5] This is in accord with *Com-*

---

4. Record, Index 14, p. 13.

5. **§ 2502. Attorney–Client Privilege**

   * * *

C. The privilege may be claimed by the client, the client's guardian or conservator, the personal representative of a deceased client, or the successor, trustee, or similar representative of a corporation, association, or other organization, wheth-

*modity Futures Trading Commission v. Weintraub,* 471 U.S. 343, 348–49, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985). There, the Supreme Court stated that the power of a solvent corporation to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors. When control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers installed as a result of a merger, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. The displaced managers may not assert the privilege over the wishes of current management. *Weintraub* held that the trustee in bankruptcy of an insolvent corporation had the power to waive the corporation's attorney-client privilege for pre-bankruptcy communications.

¶ 16 To the same effect is *Tekni–Plex, Inc. v. Meyner and Landis,* 89 N.Y.2d 123, 651 N.Y.S.2d 954, 674 N.E.2d 663 (1996). Tekni–Plex merged into TP Acquisitions, which became the surviving corporation. The merger agreement conveyed all of the assets, rights and liabilities of Tekni–Plex. The merger agreement contained warranties by Tang, the owner of Tekni–Plex, that Tekni–Plex was in full environmental compliance, and Tang indemnified TP against loss as a result of breach of the warranties. TP Acquisition later renamed itself Tekni–Plex, Inc. (new Tekni–Plex). New Tekni–Plex obtained arbitration against Tang for breach of warranties of environmental compliance. The law firm representing Tang in the arbitration had represented Tekni–Plex and Tang on environmental compliance matters and also represented them in the merger transaction. New Tekni–Plex moved to disqualify law firm and, among other things, sought an order direct-

ing law firm to return to new Tekni–Plex all of the files in the law firm's possession concerning its prior legal representation of Tekni–Plex.[6]

¶ 17 The New York Court of Appeals held that where the successor corporation continued the business operations of the pre-merger entity, ownership of the law firm's files regarding its pre-merger representation on environmental issues passed to the successor, as did control of the attorney-client privilege attached thereto. Thus, ownership of the law firm's files regarding its pre-merger representation of Tekni–Plex on environmental compliance matters passed to the management of new Tekni–Plex. The court held that the privilege did not pass on files regarding the merger transactions because the arbitration arose from representations made in the merger agreement.[7] The court concluded that it was necessary for new Tekni–Plex to have the right to invoke the pre-merger attorney-client relationship if it should have to prosecute or defend against third-party suits involving the assets, rights or liabilities that it assumed from Tekni–Plex.

¶ 18 We find the reasoning in *Weintraub* and *Tekni–Plex* persuasive. *Tekni–Plex* holds that where the successor corporation carries on the business and assumes managerial responsibilities, ownership of a lawyer's files regarding its pre-merger representation of a corporation passes to the management of the successor corporation. In the present matter, plaintiff's evidentiary materials show that the business of both Sooner and Red Lands is being continued by Western. Western has assumed Sooner's rights and liabilities and may have to prosecute or defend third-party suits involving those rights and liabilities. Attorney did not represent Sooner in the merger transaction and the materi-

er or not in existence. The person who was the attorney or the attorney's representative at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the client.

6. The motions were heard by the court, not the arbitrator.

7. The court reasoned that, as to the dispute stemming from the merger transaction, new Tekni–

Plex could not both pursue the rights of TP Acquisition and at the same time assume the attorney-client rights that old Tekni–Plex retained regarding the merger transaction. The rights of old Tekni–Plex, with regard to disputes arising from the merger transaction, remained independent from and adverse to the rights of TP Acquisition.

als sought from attorney are not materials regarding the merger transaction itself.[8]

¶ 19 Sooner did not exempt or exclude confidential or any other materials from the merger agreement; it adopted a merger agreement that transferred all assets, properties and privileges to the surviving corporation. Ownership of Sooner's assets, as well as its attorney-client privilege, has now transferred to Western by operation of law as a result of the merger. To allow Attorney to assert Sooner's attorney-client post-merger would be in derogation of the merger agreement transferring ownership to Western.

¶ 20 Attorney's work-product argument must also fail. Client files are the property of the client and not the attorney. See *Swift, Currie, McGhee & Hiers v. Henry,* 276 Ga. 571, 581 S.E.2d 37, 39–40 (2003) (work product doctrine does not apply where client seeks access to documents created or

amassed by his attorney during the course of the representation).

¶ 21 Under the facts of this case, we find that the trial judge correctly granted summary judgment in favor of Western and ordered the materials and documents to be delivered to Western. Having so ruled, we need not address the remainder of the issues raised.

¶ 22 TAYLOR, C.J., COLBERT, V.C.J., KAUGER, WATT, EDMONDSON, REIF, COMBS, GURICH, JJ., Concur.

¶ 23 WINCHESTER, J., Not Participating.

---

**8.** Attorney's answer to replevin denied "participation in transactions such as mergers and acquisitions," and her attorney advised the trial judge that Attorney did not represent Sooner in the merger negotiations or transactions: "We provided legal counsel on severance agreements with the prior employees before the merger. We did not have any input legally on this merger issue." Record, Index 14, p. 7.