OSCN Found Document:NONDOC MEDIA and WILLIAM W. SAVAGE III v. STATE Ex Rel. BOARD OF REGENTS of the UNIV. of OKLAHOMA

 

 
 NONDOC MEDIA and WILLIAM W. SAVAGE III v. STATE Ex Rel. BOARD OF REGENTS of the UNIV. of OKLAHOMA2026 OK 2Case Number: 122808Decided: 01/13/2026THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2026 OK 2, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

THE SUSTAINABLE JOURNALISM FOUNDATION d/b/a NONDOC MEDIA and WILLIAM W. SAVAGE III, Plaintiffs/Appellants,
v.
THE STATE OF OKLAHOMA ex rel. BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA, Defendant/Appellee.

ON APPEAL FROM THE DISTRICT COURT OF CLEVELAND COUNTY
STATE OF OKLAHOMA

HONORABLE MICHAEL TUPPER, DISTRICT JUDGE

¶0 The University of Oklahoma denied an open records request from NonDoc Media, which sought the production of two reports prepared by a law firm hired by the University to investigate personnel matters. The University denied the request citing various privileges and statutory exemptions. NonDoc filed suit against the University to compel production of the reports pursuant to the Open Records Act, 51 O.S. 2021, § 24A.1et seq. The University moved for summary judgment which the district court granted finding the University's cited privileges and exemptions applicable. NonDoc appealed this ruling, and this Court previously retained the matter. We find the requested reports protected from production by the attorney-client privilege.

AFFIRMED 

J. Blake Johnson, Overman Legal Group, PLLC, Oklahoma City, OK, for Sustainable Journalism Foundation, d/b/a NonDoc Media and William Savage III.

Lin Weeks, Reporters Committee for Freedom of the Press, Washington, D.C., for Sustainable Journalism Foundation, d/b/a NonDoc Media and William Savage III.

Michael Burrage, J. Renley Dennis, Whitten Burrage, Oklahoma City, OK, for State of Oklahoma ex rel. Board of Regents of the University of Oklahoma.

Drew Neville, McAfee & Taft, Oklahoma City, OK, for State of Oklahoma ex rel. Board of Regents of the University of Oklahoma.

Austin Vance, All Rise! P.L.L.C., Oklahoma City, OK, for State of Oklahoma ex rel. Board of Regents of the University of Oklahoma.

Winchester, J.:

BACKGROUND AND PROCEDURAL HISTORY

¶1 On July 26, 2018, after receiving allegations of the misreporting of certain alumni information to the news media, the University of Oklahoma (University) retained the law firm, Jones Day, to conduct an internal investigation into the University's reporting of alumni donor data to external publications. Pursuant to an engagement letter, the University and Jones Day entered into an attorney-client relationship. At the conclusion of its investigation, Jones Day presented the University with a report (the "Alumni Donor Report") that contained the results of comprehensive interviews of University personnel and other witnesses, and legal analysis and impressions by Jones Day. Thereafter, the University informed U.S. News of the previously erroneous reporting and provided adjusted, accurate data. The matter subsequently became the subject of a multi-county grand jury subpoena. Pursuant to this subpoena, the University agreed to provide the report to the Oklahoma State Bureau of Investigation (OSBI) under a joint-interest agreement between the University and OSBI. 

¶2 On November 15, 2018, the University once again retained Jones Day to investigate allegations of possible sexual misconduct involving former University President David Boren and former University employee Tripp Hall. Due to the nature of the allegations and the high-level employees involved, the University turned over its Title IX investigation to Jones Day. Jones Day provided a second report (the "Sexual Misconduct Report") to the University upon completion of its investigation. Similar to the Alumni Donor Report, this report contained several confidential employee and other witness interviews, and the legal analysis and impressions by Jones Day. Under its Title IX protocol, the University provided limited excerpts of the factual allegations from the report to President Boren and his attorney, as well as an alleged victim. This matter also became the subject of a multi-county grand jury subpoena, and just as they did with the Alumni Donor Report, the University and OSBI entered into a joint-interest agreement to share and protect the Sexual Misconduct Report. Ultimately, neither grand jury sought to pursue further action.

¶3 Pursuant to Oklahoma's Open Records Act (ORA), 51 O.S.2021, § 24A.1et seq, NonDoc Media (NonDoc) submitted its initial request for the Jones Day Reports in May 2019. NonDoc requested "any and all reports created by the law firm Jones Day for the University of Oklahoma relating to David Boren or Jim 'Tripp' Hall." The University denied this request, claiming the Reports were subject to various statutory privileges and exemptions under the ORA. Two years later, NonDoc requested the University to reconsider its position and release the requested records or provide a more detailed reason for its decision to withhold the Reports.

¶4 Before receiving the University's response, NonDoc filed suit in district court alleging the University violated the ORA. The University's response to NonDoc's reconsideration request elaborated on the confidentiality of the Reports and why the University would not be producing the requested documents. The University then moved for summary judgment, relying on various statutory law privileges as well as exemptions set forth in the ORA. NonDoc opposed the motion citing the inapplicability of these exemptions and privileges.

¶5 After the district court conducted an in camera review of both Reports, the court granted the University's motion for summary judgment in a thirty-page order detailing the reasoning behind the decision. First, the court found the attorney-client privilege protected both documents. The court also found the Reports were exempt under the ORA's personnel records exemption but not the investigatory reports exemption or the deliberative process exemption. The court further deemed the Sexual Misconduct Report protected under the work-product privilege (it did not address the Alumni Donor Report under this exception) and the identity of informer privilege. Finally, the court did not find the University had waived any of its protections. NonDoc appealed the ruling, and this Court retained the case.

STANDARD OF REVIEW

¶6 Summary judgments are reviewed under an accelerated procedure and the record on appeal is limited. Okla. Sup.Ct. Rule 1.36(c); Girl Scouts-Western Oklahoma, Inc. v. Barringer-Thomson, 2011 OK 21252 P.3d 844de novo. Id., citing In re MacFarline, 2000 OK 8714 P.3d 551Oklahoma Ass'n of Broadcasters, Inc. v. City of Norman, Norman Police Dep't, 2016 OK 119390 P.3d 689

DISCUSSION

¶7 The ORA is designed to "ensure and facilitate the public's right of access to and review of government records." 51 O.S.2021, § 24A.2Id. We find the Jones Day Reports protected by such a privilege.

I. Attorney-Client Privilege

¶8 In this case, it is undisputed the University received allegations of University personnel misconduct concerning (1) fraudulent reporting of alumni information to news organizations, and (2) sexual misconduct. The University retained Jones Day to investigate both matters and entered into an attorney-client relationship at that time, per engagement letters pertaining to both matters. The results of the Jones Day investigations generated the two separate Reports which are at issue herein and the University maintains both Reports are protected by the attorney-client privilege, among other protections. NonDoc denies the applicability of the attorney-client privilege and claims that even if such privilege existed, the University waived the privilege when it shared the Reports with others.

¶9 "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (citations omitted). Oklahoma law recognizes the existence of the attorney-client privilege where it is shown that an attorney-client relationship existed and that their communications were of a confidential nature. Chandler v. Denton, 1987 OK 38741 P.2d 855Id. at ¶ 19, , 865. This ruling is conclusive in the absence of an abuse of discretion. Id. When confidential attorney-client communications are found to be privileged, "the privilege continues to protect them from disclosure even after that relationship has been terminated." Id.

¶10 Oklahoma's statutory attorney-client privilege provides that communications between a public body and its attorney are not privileged unless "the communication concerns a pending investigation, claim, or actions, and the disclosure of the matters discussed would seriously impair the ability of the public body to process the claim or conduct the pending investigation, litigation or proceeding in the public interest." 12 O.S.2021, § 2502

¶11 We cannot inject an expiration date on an otherwise valid privilege. There is nothing in the statute or our case law which supports such a holding, and no other court has interpreted the attorney-client privilege in such a narrow manner. 

¶12 Moreover, invoking an expiration date on the privilege would create a chilling effect on the attorney-client relationship and curtail the open and honest lines of communication by the threat of its imminent disclosure: "Public disclosure of confidential communications between a public body and its attorney might seriously impair the ability of the public body to process a claim or conduct a pending investigation, litigation, or proceeding in the public interest." Okla. Ass'n of Mun. Attorneys v. State,1978 OK 59577 P.2d 1310Oklahoma Pub. Employees Ass'n v. State ex rel. Oklahoma Office of Pers. Mgmt., 2011 OK 68

¶13 The Reports herein were created by attorneys for the University's use during an investigation in anticipation of litigation and allegedly contain the thoughts, ideas and strategies of attorneys retained to provide advice to the University on how to proceed in the various actions. Both matters were the subjects of multi-county grand jury subpoenas and the Sexual Misconduct Report matter also resulted in civil litigation. Importantly, the trial court reviewed both Reports in their entirety in camera, listened to the arguments of counsel, and determined the documents were protected by the attorney-client privilege:

"Collectively, the Reports are comprised of confidential communications, summaries of witness interviews, the results of the investigations, legal analysis, opinions, advice, and mental impressions conveyed to the University by its attorney, Jones Day. The Reports contain confidential communications made for the purpose of facilitating the rendition of professional legal services to the University, and thus fall within the Oklahoma attorney-client privilege found in 12 O.S. § 2502

There are no additional, material facts to be gleaned which would alter the conclusion that the Reports are protected by the attorney-client privilege. In our de novo review of the trial court's ruling as to the protection of the attorney-client privilege, we find no error.

II. Remaining Privileges and Exemptions

¶14 Because this Court finds the Reports protected by the attorney-client privilege and, as such non-discoverable, there is no need to review the remaining exemptions and claims of privilege.

III. Waiver

¶15 NonDoc maintains that the University waived its privileges and exemptions by (1) sharing the Reports with the OSBI; (2) disclosing information to U.S. News; (3) sharing redacted excerpts with Boren and his attorneys; and (4) sharing redacted excerpts with one of the alleged witnesses/victims. The University counters that any disclosures of the Reports consisted of mandatory disclosures per statute and due process as well per a joint interest agreement with the OSBI.

¶16 After reviewing the arguments of counsel and all of the evidence, the trial court addressed the arguments concerning waiver and, with detailed reasoning, found each to be invalid. Specifically, the court found that: (1) the information given to U.S. News did not come from the Alumni Donor Report but rather the University's Office of Institutional Research and Reporting which held the information separate and apart from the Report; (2) both Reports were shared with the OSBI pursuant to a subpoena and a Joint Interest Agreement to protect the privilege; (3) the University provided the Title IX respondent with a limited portion of the Sexual Misconduct Report consisting of the allegations made against him. He was not provided with the entire Report and the excerpts provided were done pursuant to statutory duty and due process obligations; and (4) the University provided the Title IX complainant with a limited portion of the Sexual Misconduct Report consisting of the factual information regarding him. He was not provided with the entire Report and the excerpts provided were done pursuant to statutory duty and due process obligations. We agree with the district court's findings. The trial court did not err in denying NonDoc's waiver arguments.

¶17 Waiver of a privilege or exemption should be narrowly construed. Citizens Against Taxpayer Abuse, Inc. v. City of Oklahoma City, 2003 OK 6573 P.3d 871See 12 O.S.2021, § 2105Clark v. Dist. Court, 668 P.2d 3Metro Wastewater Reclamation Dist. v. Cont'l Cas. Co., 142 F.R.D. 471 (D.Colo.1992).

¶18 Oklahoma law provides that waivers of privilege must be voluntary. 12 O.S.2021, § 2511Hogan v. State, 2006 OK CR 27139 P.3d 907Id.

¶19 Where parties have entered into confidentiality agreements, courts have generally upheld the attorney-client privilege. NonDoc argues that sharing the Reports with the OSBI constituted a waiver of privilege. Such waivers are determined on a case-by-case basis. Upjohn Co. v. United States, 449 U.S. at 396. NonDoc's contention is not supported by relevant Oklahoma authority where the disclosure, as in this case, was pursuant to a subpoena and the execution of a Joint-Interest Agreement to protect the privilege. For cases in other jurisdictions supporting the non-waiver of documents produced pursuant to confidentiality agreements see, e.g., In re Natural Gas Commodities Litigation, 232 F.R.D. 208 (S.D.N.Y. 2005)(voluntary disclosure of privileged documents to government agencies pursuant to explicit non-waiver agreements did not waive attorney-client and/or work product privilege); N.L.R.B. v. Jackson Hosp. Corp., 257 F.R.D. 302 (D.D.C.2009) (Under the common interest rule, individuals may share information without waiving the attorney-client privilege if: (1) the disclosure is made due to actual or anticipated litigation; (2) for the purpose of furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties); Police & Fire Ret. Sys. of the City of Detroit v. Safenet, Inc., 2010 WL 935317 (S.D.N.Y. Mar. 12, 2010) (no waiver found where disclosure was pursuant to confidentiality agreement with law enforcement authority); Maruzen Co. v. HSBC USA, Inc., 2002 WL 1628782 (S.D.N.Y. July 23, 2002) (denying motion to compel production of internal report produced pursuant to confidentiality agreements with government agencies).

¶20 Here, the OSBI was not in an adversarial position to the University but, instead, shared a joint interest among governmental agencies in the investigation of alleged sexual misconduct. Additionally, NonDoc was not a party to the underlying matters for which the Reports were initially prepared but instead seeks the documents under an open records request. Because the Joint-Interest Agreement protects the University's information, the Court finds the attorney-client privilege must be upheld. Further, the only other disclosures of the Sexual Misconduct Report from the University were pursuant to Title IX protocol and due process procedure. These disclosures were of select excerpts that were limited in time and access and identified as attorney-client documents. Finally, with respect to the University's disclosure of inaccurate reporting to U.S. News, the University did not provide the publication with the Alumni Donor Report. Indeed, the information was possessed by the University's Office of Institutional Research and Reporting, separate and apart from the Report. NonDoc has failed to satisfy its burden to prove waiver. We agree with the trial court's findings and, accordingly, find no waiver of the attorney-client privilege.

CONCLUSION

¶21 After review of the record and substantive law, we find the University properly withheld disclosure of the Jones Day Reports as documents protected by the attorney-client privilege. While additional privileges and/or exemptions might also be applicable, we need not entertain those here today. The University did not waive the privilege by producing the Reports pursuant to a subpoena and joint-interest agreement with the OSBI nor did the release of excerpts of the Sexual Misconduct Report's allegations to the alleged victim and suspect, required under Title IX, diminish the protections of the privilege. Accordingly, we find the motion for summary judgment properly granted. 

AFFIRMED

CONCUR: KUEHN, V.C.J., WINCHESTER, EDMONDSON, COMBS, GURICH, KANE, AND JETT, JJ. 

DISSENT: ROWE, C.J. (BY SEPARATE WRITING). 

RECUSED: DARBY, J. 

FOOTNOTES

 

B. A person claiming a privilege must prove that the conditions prerequisite to the existence of the privilege are more probably true than not. A person claiming an exception to a privilege must prove that the conditions prerequisite to the applicability of the exception are more probably true than not. If there is a factual basis to support a good faith belief that a review of the allegedly privileged material is necessary, the court, in making its determination, may review the material outside the presence of any other person.

12 O.S.2021, § 2105

E. A disclosure of a communication or information covered by the attorney-client privilege or the work-product doctrine does not operate as a waiver if:

1. The disclosure was inadvertent;

2. The holder of the privilege took reasonable steps to prevent disclosure; and

3. The holder of the privilege took reasonable steps to rectify the error including, but not limited to, information falling within the scope of paragraph 4 of subsection B of Section

3226 of this title, if applicable.

12 O.S.2021, § 2502

Disclosure of a communication or information meeting the requirements of an attorney-client privilege as set forth in this section or the work-product doctrine to a governmental office, agency or political subdivision in the exercise of its regulatory, investigative, or enforcement authority does not operate as a waiver of the privilege or protection in favor of nongovernmental persons or entities. Disclosure of such information does not waive the privilege or protection of undisclosed communications on the same subject unless:

1. The waiver is intentional;

2. The disclosed and undisclosed communications or information concern the same subject matter; and

3. Due to principles of fairness, the disclosed and undisclosed communications or information should be considered together.

12 O.S.2021, § 2502

ROWE, C.J., DISSENTING: 

¶1 The Open Records Act is fundamental to protecting the political power vested in the people of Oklahoma by our state constitution. Okla. Pub. Emps. Ass'n v. State ex rel. Okla. Office of Personnel Mgmt., 2011 OK 68267 P.3d 838 Such access permits checks against the arbitrary exercise of official power and secrecy in the political process. Id.

¶2 The Open Records Act (the "ORA") was created to "ensure and facilitate the public's right of access to and review of government records so they may efficiently and intelligently exercise their inherent political power." 51 O.S. § 24A.2Id. § 24A.5. We have found the "Legislature's emphatic message to government agencies is, unless otherwise specifically excluded, the public must have prompt and reasonable access to records." Oklahoma Ass'n of Broadcasters, Inc. v. City of Norman, Norman Police Dep't, 2016 OK 119 ¶ 15, 390 P.3d 689

¶3 The Majority acknowledges the ORA's policy in facilitating the public's right to access government records and that public access may be limited by state evidentiary privileges or exemptions in the ORA. But the Majority fails to recognize that courts "construe the [ORA's] provisions to allow access unless an exception clearly applies." Id. The record before us does not demonstrate an exception clearly applies. Accordingly, I would hold that summary judgment was improperly granted as issues of material fact remain, and as a matter of law attorney-client privilege does not apply.

I. Attorney-client privilege does not apply as a matter of law. 

¶4 Attorney-client privilege is governed by 12 O.S. § 2502Chandler v. Denton, 1987 OK 38741 P.2d 85512 O.S. § 2502

D. There is no privilege under this section . . .

7. As to a communication between a public officer or agency and its attorney unless the communication concerns a pending investigation, claim or action and the court determines that disclosure will seriously impair the ability of the public officer or agency to process the claim or conduct a pending investigation, litigation or proceeding in the public interest.

Id. § 2502(D)(7) (emphasis added).

¶5 Neither party disputed that the University entered an attorney-client relationship with Jones Day, but the parties disagreed on whether attorney-client privilege applied to the Reports. The University argued attorney-client privilege applied because the University entered an attorney-client relationship with Jones Day and the Reports were created by Jones Day for the University's use during an investigation. Conversely, NonDoc argued attorney-client privilege is inapplicable because its application for public bodies is limited to communications that concern a "pending investigation, claim, or action" and the Jones Day investigation had concluded. 12 O.S. § 2502

¶6 Attorney-client privilege extends to public bodies, but its statutory protection--and our jurisprudence--recognize it is not absolute. This Court has explicitly stated confidential communications between a public body and its attorney may be protected "only if the communications concern a pending investigation, claim, or action, and disclosure of the matters discussed would seriously impair the ability of the public body to process the claim or conduct the pending investigation, litigation or proceeding in the public interest." Oklahoma Ass'n of Mun. Attorneys, 1978 OK 59

¶7 Whether attorney-client privilege applies to the Reports is two-fold: (1) the communication concerns a pending investigation, claim, or action and (2) the court determines disclosure of the communication will seriously impair the public body's ability to conduct a pending investigation. This analysis turns on the meaning of "pending." "The cardinal rule of statutory interpretation is to ascertain and give effect to legislative intent and purpose as expressed by the statutory language." Odom v. Penske Truck Leasing Co., 2018 OK 23415 P.3d 521Id. "Only where legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity, are rules of statutory interpretation employed." Id. ¶ 18. We consider the ORA's policy, the Legislature's intent, and the burden of proof in defining the ORA's terms. Oklahoma Ass'n of Broadcasters, Inc. v. City of Norman, Norman Police Dep't, 2016 OK 119390 P.3d 689

¶8 To ascertain legislative intent, we begin with the text. Words are given their common meaning unless a contrary legislative intent plainly appears. 25 O.S. § 1see Welch v. Crow, 2009 OK 20206 P.3d 599See Pending, Black's Law Dictionary (12th ed. 2024) ("Throughout the continuance of; during"); Pending, American Heritage Dictionary (5th ed. 2022) ("While in the process of; during"). Section 2502(D)(7)'s use of the word "pending" functions as a qualifier for the subsequent words "investigation," "claim," and "action," thereby limiting the attorney-client privilege to communications related to matters that are pending.

¶9 The Majority rejects NonDoc's argument, finding the key factor is whether the investigation or action was pending at the time the communication was made, not when the open records request was submitted. Even assuming the Majority is correct, application of the privilege requires a two-step analysis. The Majority's analysis fails to address the second step.

¶10 For the privilege to apply, the communication between a public body and its attorney must (1) concern a pending investigation, claim, or action and (2) the court must determine disclosure of the communication will seriously impair the public body's ability to conduct the pending investigation. The second step of the privilege demonstrates it solely protects a pending investigation from disclosure if it will seriously impair the public body's ability to conduct the investigation. As a matter of law, how can the court make a finding that disclosure of the Reports will seriously impair the ability of the University to conduct its pending investigation, when the investigation concluded four years prior? The answer is straightforward; it cannot. A completed investigation cannot be impaired.

¶11 The record shows that any investigations, claims, or actions relating to the Alumni Donor Report concluded prior to May 2019de novo review, I would hold that the statute is clear--a completed investigation cannot be impaired. 

II. Whether the Sexual Misconduct Report is protected by the work product doctrine remains an issue of material fact.

¶12 The work product doctrine is governed by the discovery rules outlined in 12 O.S. § 3226Ellison v. Gray, 1985 OK 35702 P.2d 36012 O.S. § 3226Hall v. Goodwin, 1989 OK 88775 P.2d 291Id.

¶13 Documents "cannot automatically be deemed to have been generated in anticipation of litigation merely because litigation may be deemed a contingency." Heffron v. Dist. Court Oklahoma Cnty., 2003 OK 7577 P.3d 1069Id. To determine whether a document was prepared in anticipation of litigation the court must determine whether such a document is typically prepared irrespective of a lawsuit--whether the document would not have been created but for anticipated litigation. Hall, ¶ 12, 775 P.2d at 295. More specifically, a party claiming a document was prepared in anticipation of litigation must show that the primary motivating purpose of a particular document's creation was in aid of possible litigation, even if litigation is not imminent. Heffron, ¶ 21, 77 P.3d at 1079 (emphasis added). Id.

¶14 The University claimed the Reports were made in anticipation of possible litigation involving constructive fraud for the Alumni Donor Report and Title IX retaliatory claims for the Sexual Misconduct Report. NonDoc argued the University failed to show that either of the Reports were made in anticipation of litigation. 

¶15 Regardless of whether Jones Day's investigation was substantially motivated by litigation, the test for work product is whether the primary motivation for a particular document's creation was in aid of future litigation. Heffron, ¶ 21, 77 P.3d at 1079. The University argued the Sexual Misconduct Report was made in anticipation of retaliatory Title IX claims. 

¶16 By asserting the work product doctrine, the University had the burden of proving the primary motivating purpose of the Sexual Misconduct Report's creation was in anticipation of litigation. The record is unclear whether the Sexual Misconduct Report was primarily created in anticipation of litigation. Accordingly, whether the Sexual Misconduct Report was made in anticipation of litigation remains an issue of material fact.

III. The identity of informer privilege does not apply to the Sexual Misconduct Report as a matter of law.

¶17 The United States Supreme Court recognized that the identity of informer privilege exists to advance the public's interest in effective law enforcement by providing anonymity to citizens who disclose legal violations to law enforcement officials. Rovario v. United States, 353 U.S. 53 (1957). 

The United States, state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting the investigation.

12 O.S. § 2510

¶18 The University asserted that the identity of informer privilege has been extended to include information furnished to agencies beyond law enforcement that are involved in investigations and argued that the privilege covers both the witnesses' identities and statements when combined with the other asserted privileges. Conversely, NonDoc argued that the University may not claim the identity of informer privilege--since neither Jones Day, nor the University, are a law enforcement agency or legislative committee--and that Jones Day's investigation was not conducted to find a possible violation of law. NonDoc additionally asserted that--even if applicable--the identity of informer privilege's protection is limited to the identities of the informers and does not extend to the information provided by the informers. Ultimately, the district court agreed with the University and held that the Sexual Misconduct Report was protected by the identity of informer privilege. 

¶19 Determining whether the identity of informer privilege applies requires statutory interpretation. The text states the privilege only applies where information "relating to or assisting in an investigation of a possible violation of law" is furnished to a "law enforcement officer or member of a legislative committee or its staff conducting the investigation." 12 O.S. § 2510

IV. Whether the reports constitute "personnel records" under (a) remains for determination. 

¶20 Where state evidentiary privileges do not protect records from disclosure, the ORA contains a series of statutory exemptions. The personnel records exemption provides:

A. A public body may keep personnel records confidential:

1. Which relate to internal personnel investigations including examination and selection material for employment, hiring, appointment, promotion, demotion, discipline, or resignation; or

2. Where disclosure would constitute a clearly unwarranted invasion of personal privacy such as employee evaluations, payroll deductions, employment applications submitted by persons not hired by the public body, and transcripts from institutions of higher education maintained in the personnel files of certified public school employees; provided, however, that nothing in this subsection shall be construed to exempt from disclosure the degree obtained and the curriculum on the transcripts of certified public school employees.

51 O.S.2014, § 24A.7

¶21 The University argued that the Reports are exempt under the ORA as personnel records. NonDoc countered that the exemption did not apply because the Reports differ from traditionally recognized personnel records, and even if portions qualify, the remainder should be disclosed pursuant to 51 O.S. § 24A.5

¶22 For a record to be protected under the exemption, the record must first fall within the definition of "personnel records" contemplated by § 24A.7. If the record qualifies as a personnel record, the second determination is whether the record falls within one of the subcategories of personnel records protected by § 24A.7(A) or (D). Id. § 24A.7(B). 

¶23 The ORA does not expressly define "personnel record," but § 24A.7 provides guidance by including specific examples of personnel records. These include records directly tied to an individual employee's employment, such as materials concerning hiring, firing, promotion, demotion, discipline, or resignation, payroll deductions, and employment applications. Id. § 24A.7(A), (B). While not exhaustive, the examples reflect a legislative intent to narrow the definition of "personnel records" to only those records which are directly tied to an individual employee's employment status, qualifications, or performance.

¶24 Once a record has been found to constitute a personnel record within the contemplation of § 24A.7, the court must determine whether one of the protectible subcategories of § 24A.7(A) or (D) applies. Relevant here are personnel records under § 24A.7(A)--personnel records which (1) relate to internal personnel investigations; or (2) would constitute a clearly unwarranted invasion of personal privacy if disclosed. Id. § 24A.7(A). Ascertaining whether a personnel record falls within the ambit of subsection (A)(1)'s internal personnel investigations is straightforward as the presence of--and relation to--an investigation is easily discernible. But when applying the exemption under subsection (A)(2), determining whether disclosure would constitute a "clearly unwarranted invasion of personal privacy" requires a case-specific balancing of interests.

¶25 In Oklahoma Pub. Employees Ass'n v. State ex rel. Oklahoma Office of Pers. Mgmt., we held that "where a claim is made that disclosure of information under 51 O.S.Supp.2005, § 24A.72011 OK 68267 P.3d 838

¶26 The district court's analysis applied both § 24A.7(A)(1) and (A)(2). The district court first determined that the Reports were exempt because they "include[d] personnel records." But just because the Reports reference employees or contains employee statements does not necessarily qualify them as "personnel records" under the statutory framework.

¶27 Next, the district court determined that disclosure of the Reports would constitute an unwarranted invasion of personal privacy of the witnesses interviewed for the Reports. 

¶28 Because we have not reviewed the Reports themselves, 

V. The Reports are not protected by a constitutional right to privacy.

¶29 According to the ORA, the privacy interests of persons who disclose information to public bodies are "adequately protected in the specific exceptions to the Oklahoma Open Records Act or in the statutes which authorize, create or require the records." 51 O.S. § 24A.2

¶30 The University relied on Tenth Circuit precedent, arguing that the witnesses' statements contained in the Reports should be protected as "[d]ue process [] implies an assurance of confidentiality with respect to certain forms of personal information possessed by the state." Anderson v. Blake, 469 F.3d 910, 914 (10th Cir. 2006) (quoting Mangels v. Pena, 789 F.2d 836, 839 (10th Cir. 1986). The Anderson court determined this right to privacy arises from a "legitimate expectation of privacy" that depends "upon the intimate or otherwise personal nature of the material which the state possesses." Anderson, 469 F.3d at 914 (10th Cir. 2006).

¶31 Since Anderson, the Tenth Circuit has retreated somewhat, as the United States Supreme Court has "made clear that any statements in its precedents regarding a constitutional protection against government disclosure of personal information were dicta." Leiser v. Moore, 903 F.3d 1137, 1143 (10th Cir. 2018). Id. 

¶32 Absent an instruction from the United States Supreme Court finding a constitutional right protecting government disclosure of personal information, we are left with the plain text of the ORA which clearly states that unless a confidential privilege is specifically created by state or federal statute, persons "who submit information to public bodies have no right to keep this information from public access nor reasonable expectation that this information will be kept from public access[.]" 51 O.S. § 24A.2 Accordingly, I would hold that the Reports are not protected by a constitutional right to prevent government disclosure of private information.

VI. Issues of material fact remain as to whether protections under the ORA were waived.

¶33 Even where an evidentiary privilege or ORA exemption applies, confidentiality may be waived by a public body's actions. Waiver is defined as a voluntary relinquishment of a known right. Faulkenberry v. Kansas City S. Ry. Co., 1979 OK 142602 P.2d 20312 O.S. § 2511Citizens Against Taxpayer Abuse, Inc. v. City of Oklahoma City, 2003 OK 6573 P.3d 871

¶34 The record shows that the University disclosed at least portions of information contained in the Reports to U.S. News & World Report, President Boren's attorney, the OSBI, the alleged victim who published portions of the Sexual Misconduct Report, numerous undisclosed alleged victims, and several crisis management firms. 

¶35 The case before us contains a litany of questions of fact and numerous conclusions of law. A record this intricate--with issues of first impression--requires exacting scrutiny on appeal. As such, I cannot accede to the Majority's holding which simply rubber stamps the district court's findings by assuming Title IX controls and that the joint interest agreement exists (See infra ¶¶ 36-38). Upon thorough review of the record, whether the University waived any privilege--if any are found to be applicable--remains an issue of material fact.

A. Whether the University's disclosures to the OSBI constitute voluntary waiver remains an issue of material fact.

¶36 The University claimed that its disclosures of the Alumni Donor Report and the Sexual Misconduct Report to the OSBI were required pursuant to a subpoena and joint-interest agreement. The University contended that its joint-interest agreement maintained the privilege even after disclosing the Reports to a third party. Neither the subpoenas nor the joint interest agreement were produced during discovery and are not part of the record. As such, the existence and scope of any joint-interest agreement and the nature of the subpoena cannot be presumed and must be established through competent evidence on remand

¶37 A ruling upon a motion for summary judgment is made "upon the record which the parties have actually made and not on that which is potentially possible." Daugherty v. Farmers Co-op. Ass'n, 1984 OK 72689 P.2d 947Id. The district court "cannot assume facts which are in dispute." Post Oak Oil Co. v. Stack & Barnes, P.C., 1996 OK 23913 P.2d 1311

¶38 Whether disclosure of the Reports to the OSBI was voluntary and therefore waives confidentiality, despite an alleged joint interest agreement, remains an issue of material fact. 

B. Whether the University's disclosure of the Sexual Misconduct Report constitutes voluntary waiver remains an issue of material fact.

¶39 The University argued that any disclosures were made pursuant to Title IX. NonDoc countered with several points: (1) Jones Day's engagement letter for the Sexual Misconduct Report does not mention Title IX; 

¶40 The record is unclear whether Jones Day was in fact conducting a Title IX investigation, as material facts surrounding Jones Day's engagement remain unanswered and the circumstances surrounding whether Title IX would mandate disclosure to the recipients of the Reports remain unresolved. 

VII. CONCLUSION

¶41 Oklahoma's Constitution recognizes that "all political power is inherent in the people." Okla. Const. art. 2, § 1; 51 O.S. § 24A.251 O.S. § 24A.2Oklahoma Ass'n of Broadcasters, Inc. v. City of Norman, Norman Police Dep't, 2016 OK 119390 P.3d 689clearly applies, the public maintains its right of access to the Reports.

¶42 After a thorough review of the record, and in light of the ORA's purpose, I would hold that the Reports are not protected by the attorney-client privilege, the identity of informer privilege or a constitutional right to privacy. Moreover, issues of material fact remain as to whether waiver occurred, and if not, whether the Reports are protected by work product doctrine, or the personnel records exemption. Accordingly, I would hold that summary judgment was improperly granted to the University.

FOOTNOTES

B. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client: . . . 

See NonDoc's Resp. to the University's Statement of Material Facts and Statement of Additional Material Facts, ¶ 16, https://perma.cc/6VYQ-SX4X (President Gallogly on December 11, 2018 stating "[t]his review is now complete and issues have been corrected. . . . There's no litigation, . . . Jones Day conducted a third-party review and made recommendations, which we followed."); see also the University's Mot. Summ. J. at 2 (recognizing that the OSBI's investigation had already concluded).

 (University counsel claiming "the matter has been closed for more than two years" as of June 11, 2021).

B. DISCOVERY SCOPE AND LIMITS. Unless otherwise limited by order of the court in accordance with the Oklahoma Discovery Code, the scope of discovery is as follows: . . . 

3. TRIAL PREPARTION: MATERIALS

a. Unless as provided by paragraph 4 of this subsection, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative, including the other party's attorney, consultant, surety, indemnitor, insurer or agent. Subject to paragraph 4 of this subsection, such materials may be discovered if:

(1) they are otherwise discoverable under paragraph 1 of this subsection, and

(2) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

b. If the court orders discovery of such materials, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of a party's attorney or other representative concerning the litigation.

Scott v. Peterson, 2005 OK 84126 P.3d 1232 Fed. Prac. & Proc. Civ. § 2024 (3d ed.). Thus, the federal determination on work product's applicability is whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Id. (emphasis added).

As outlined below, it is unclear whether Jones Day was hired to conduct a Title IX investigation as the facts surrounding the investigation remain unresolved. See infra Section VI. B.

See the University's Mot. Summ. J. Ex. 3, at 1 (Jones Day's first engagement letter) and the University's Mot. Summ. J. Ex. 4, at 1 (Jones Day's second engagement letter).

See Robinson v. State, 1981 OK CR 107634 P.2d 734Rovario v. United States, 353 U.S. 53 (1957)). And "[a]lthough decisions of the Court of Criminal appeals are not binding upon this Court, . . .  they are accorded a high degree of persuasiveness." Frierson v. Hines, 1967 OK 60426 P.2d 362

See Stephenson Enters., Inc. v. Marshall, 578 F.2d 1021 (5th Cir. 1978); Film Allman, LLC v. Sec'y of Lab., 682 Fed. Appx. 860 (11th Cir. 2017). Instead, both cases relied upon by the district court involved disclosures made to the Secretary of Labor--an executive officer charged with the enforcement of law.

D. Public bodies shall keep confidential the home address, telephone numbers and social security numbers of any person employed or formerly employed by the public body.

B. All personnel records not specifically falling within the exceptions provided in subsection A or D of this section shall be available for public inspection and copying including, but not limited to, records of:

1. An employment application of a person who becomes a public official;

2. The gross receipts of public funds;

3. The dates of employment, title or position; and

4. Any final disciplinary action resulting in loss of pay, suspension, demotion of position or termination.

Whalen v. Roe, 429 U.S. 589, 599 (1977), the Supreme Court discussed the possibility of a constitutional right to privacy regarding "the right of an individual to not have his private affairs made public by the government." Relying upon Whalen, the Tenth Circuit found that this right implied an assurance of confidentiality with respect to intimate or personal information possessed by the government. Mangels v. Pena, 789 F.2d 836, 839 (10th Cir. 1986). The Tenth Circuit then found that different kinds of information met this intimate standard, including: disclosure of an individual's personal medical information, A.L.A. West Valley City, 26 F.3d 989, 990 (10th Cir. 1994); Herring v. Kennan, 218 F.3d 1171, 1173 (10th Cir. 2000), and disclosure of a video showing a victim's rape, Anderson v. Blake, 469 F.3d 910, 914 (10th Cir. 2006). However, in NASA v. Nelson, 562 U.S. 134 (2011), the Supreme Court classified its earlier discussion of the constitutional right to privacy in Whalen as dicta.

See Order at 6--8, 10; see also NonDoc's Statement of Args. and Authorities in Opp'n to the University's M. Summ. J. Ex. C (May 21, 2019, Email from the University to the alleged victim arranging his viewing of the Sexual Misconduct Report "as we have with other witnesses."); Suppl. to NonDoc's Statement of Argus. and Authorities in Opp'n to the University's Mot. Summ. J. Ex. 1, ¶ 21 (President Gallogly stating knowledge "that multiple crisis management public relations firms were briefed" on the Sexual Misconduct Report's findings.).

See In re Qwest Commc'ns Int'l, 450 F.3d 1179, 1197 (10th Cir. 2006).

See Aff. in Supp. of NonDoc's Resp. to the University's Mot. Summ. J. ¶ 9. However, the University informed the alleged victim that he could not review his portion of the Sexual Misconduct Report since the interview with Jones Day did not result in a Title IX investigation being opened. See NonDoc's Statement of Args. and Authorities in Opp'n to the University's Mot. Summ. J. Ex. B (University denying access since the alleged victim "ha[d] not filed a complaint[.]"). In fact, the victim was only provided access to a portion of the Sexual Misconduct Report after a subsequent Title IX proceeding was opened upon his repeated requests. See id. Ex. C.

However, the University disputed the alleged victim's contentions and instead claimed that the original complainant was a different person. See the University's Reply in Supp. of its Mot. Summ. J. at 5.